IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DE LAGE LANDEN FINANCIAL SERVICES, INC. | : : : | CIVIL ACTION |
| v. | : : | |
| DONNER MEDICAL MARKETING, INC., et al. | : : | NO. 10-04108 |

### MEMORANDUM RE: MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Baylson, J.                                                                                    December 15, 2010

### I. Introduction

Presently before this Court is the Motion to Dismiss for Lack of Personal Jurisdiction of Defendants Donner Medical Marketing, Inc. ("DMM") and Bruce Donner ("Donner"). This action for fraud, breach of contract, and unjust enrichment arises from a series of contracts for the purchase and leasing of medical equipment entered into by Plaintiff De Lage Landen Financial Services ("DLL"), DMM, and Defendant Allied Health Care Services, Inc. ("Allied"). For the following reasons, this Court will deny the Motion to Dismiss.

### II. Factual & Procedural Background

DLL is a Michigan corporation with headquarters located in Wayne, Pennsylvania. Compl. ¶ 1; Affidavit of Edward Gresh, Nov. 4, 2010 ("Gresh Aff.") ¶ 2. DMM is a New Jersey corporation with its principal place of business in New Jersey. Compl. ¶ 2. Donner, a New Jersey resident, is a director and officer of DMM, and the sole full-time employee of DMM at its New Jersey address. Compl. ¶ 3-4. Allied is a New Jersey corporation with its principal place of

business in New Jersey. Compl. ¶ 5.

In the Complaint (ECF No. 1), DLL asserts that beginning in 2007, DLL and Allied entered into a series of "Master Lease Schedules" and corresponding "Master Lease Agreements" (collectively, "the Agreements"), pursuant to which DLL purchased Life Care Products PLV 102 Home Care Ventilators ("Ventilators") from DMM and then leased the Ventilators to Allied. Compl. ¶¶ 9-11. DMM sent invoices to DLL ("the Invoices") that identified the Ventilators for purchase in each transaction by their manufacturing model and serial numbers. Compl. ¶¶ 12-13. DLL paid the Invoices by sending checks that totaled $1,425,000 to DMM, which DMM deposited. Compl. ¶ 14. DLL alleges that Donner was personally involved in preparing the Invoices that were sent to and paid by DLL. Compl. ¶¶ 29, 43, 57, 71. Allied acknowledged receipt of the Ventilators in Delivery and Acceptance Certificates ("the Certificates") that corresponded to each transaction. Compl. ¶¶ 18, 32, 46, 60.

The crux of DLL's claims is that, despite its expenditure of over $1.4 million dollars and the legion of documents delineating the sales and leasing arrangements, the purported serial numbers in the Invoices did not correspond to any Ventilators produced by the manufacturer. Compl. ¶¶ 15, 24, 38, 52, 66. Indeed, DLL now believes that no Ventilators ever exchanged hands in connection with these contracts. Id.

DLL alleges 16 counts in this action: Count I, Fraud, against Donner, for preparing Invoices that falsely represented that DMM was selling certain Ventilators to DLL and delivering them to Allied; Count II, Conversion, against Donner, for unlawfully obtaining the purchase price monies from DLL; Counts III and IV, Unjust Enrichment, against Donner and DMM, for retaining the purchase price monies from DLL without delivering any Ventilators to Allied;

Counts V, VIII, IX, and XIV, Breach of Contract, against DMM, in connection with each of the Invoices; Counts VI, IX, XII, and XV, Breach of Contract, against Allied, in connection with each of the rental and leasing Agreements; and Counts VII, X, XIII, and XVI, Breach of Contract, against Allied, in connection with each of the Certificates. DLL's prayer for relief includes compensatory damages, punitive damages, prejudgment interest thereon, attorney's fees and costs of suit, and other equitable and just relief.

DMM and Donner (hereinafter, "Defendants")[1] filed the instant Motion to Dismiss for Lack of Personal Jurisdiction on October 7, 2010. ECF No. 10. Plaintiff filed a response brief in opposition to the motion on November 5, 2010. ECF No. 12. Plaintiff also filed an Affidavit of Edward Gresh, the Vice President of Risk for the Office Technology Global Business Unit of DLL, dated November 4, 2010, in support of its motion. ECF No. 12-1. Defendants did not reply to Plaintiff's response brief or file a counter affidavit.

The Court held oral argument on this motion on December 9, 2010. The Court expressed its surprise that Defendants neither filed a reply and/or counter affidavit nor requested discovery. The Court asked Counsel for Defendants if they wanted the opportunity to take either course of action. Counsel declined, stating that Defendants were resting on the record. Therefore, the legal issue of whether this Court can exercise personal jurisdiction over Defendants is ripe for determination.

### III. Basis of Federal Jurisdiction

---

[1] An executed summons memorializes that Defendant Allied was served on August 24, 2010. ECF No. 5. However, no attorney has entered an appearance for Allied, nor has Allied filed a timely answer or motion. At oral argument on December 9, 2010, Plaintiff represented that Allied has filed for bankruptcy. However, the status of Allied does not hinder the Court's consideration of the instant motion.

The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000, exclusive of interests and costs, and the parties are citizens of different states. For purposes of diversity jurisdiction, a corporation is a citizen of its state of incorporation and of the state where it has its principal place of business. 28 U.S.C.A. § 1332(c)(1). Plaintiff DLL is a citizen of Michigan and Pennsylvania.[2] Defendants DMM, Donner, and Allied are all New Jersey citizens.

## IV. The Parties' Contentions

Defendants assert that they lack the minimum contacts with Pennsylvania necessary to allow this Court to assert personal jurisdiction over them. Defendants contend that the "operative agreements" in this case are the Agreements signed by Allied and DLL, which DMM and Donner did not sign. Defs.' Mot. Dismiss 1-2. Defendants argue that the Pennsylvania-directed contacts alleged in the Complaint–e.g., that DMM mailed the Invoices to Plaintiff and that Donner was personally involved in preparing the invoices and presenting them to DLL–are insufficient for jurisdiction as to the claims that sound in contract. Defs.' Mot. Dismiss 2, 4. Furthermore, Defendants claim that Plaintiff cannot satisfy the "effects test" for personal jurisdiction over a tort claim because the harm is presumed to occur in Michigan, where Plaintiff is incorporated, and because the Ventilators were to be delivered to Allied in New Jersey, not to

---

[2] The Supreme Court recently interpreted the phrase "principal place of business" to refer to "the place where the corporation's high level officers direct, control, and coordinate the corporation's activities," or the "'nerve center' [which] will typically be found at a corporation's headquarters." Hertz Corp. v. Friend, 130 S.Ct. 1181, 1186 (2010). Although DLL did not allege in the Complaint that its "principal" place of business is in Pennsylvania, its representative affirmed that DLL's United States headquarters, at which transactions are reviewed, funded, and managed, are located in Pennsylvania. Gresh Aff. ¶ 2. Therefore, DLL's principal place of business is Pennsylvania.

Plaintiff in Pennsylvania. Defs.' Mot. Dismiss 5-6.

DLL responds that the operative agreements between itself and DMM and Donner are the Invoices that DMM submitted to DLL totaling $1,425,000. Pl.'s Resp. 4. DLL made remittance by sending checks from its Pennsylvania office to DMM, which DMM accepted. Pl.'s Resp. 4-6. Moreover, DLL argues that jurisdiction lies over the Defendants with respect to the intentional tort claims because each transaction began with the Defendants drafting and mailing an invoice to DLL's Pennsylvania address. Pl.'s Resp. 5-7. DLL's representative affirms that the harm from DMM's actions was felt in Pennsylvania because "[a]ll matters relating to the transactions, including review of the Invoices, setting up Donner Medical for funding in DLL's systems and funding Donner Medical were handled in Pennsylvania." Gresh Aff. ¶ 12.

## V.  Legal Standards for Motion to Dismiss for Lack of Personal Jurisdiction

When deciding a motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), the court "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." Pinker v. Roche Holdings Ltd., 292 F.3d 361, 368 (3d Cir. 2002) (quoting Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 142 n.1 (3d Cir.1992)). Once a jurisdictional defense is raised, the plaintiff bears the burden of proving, through affidavits or other competent evidence, sufficient contacts with the forum state to establish personal jurisdiction. See Dayhoff Inc. v. H.J. Heinz Co., 86 F.3d 1287, 1302 (3d Cir. 1996). When the district court does not hold an evidentiary hearing, the plaintiff must establish only a prima facie case of personal jurisdiction. Eurofins Pharma US Holdings v. BioAlliance Pharma SA, 623 F.3d 147, 155 (3d Cir. 2010) (citing Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009)). The burden then shifts to the defendant to establish that asserting

5

jurisdiction is unreasonable. See Carteret Sav. Bank, 954 F.2d at 150 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)).

## VI.  Discussion

### A.  Jurisdictional Standards

Federal Rule of Civil Procedure 4(e) authorizes a federal district court to assert personal jurisdiction over a non-resident defendant to the extent permitted by the law of the state where that court sits. Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1221 (3d Cir. 1992) (citing Mesalic v. Fiberfloat Corp., 897 F.2d 696, 698 (3d Cir. 1990)). The court first determines whether there is a statutory basis for the exercise of jurisdiction, and then analyzes whether the non-resident defendant has sufficient minimum contacts with the forum state. Eurofins, 623 F.3d at 155 (citing Metcalfe, 566 F.3d at 330). The purpose of this inquiry is to ensure that "the exercise of jurisdiction comport[s] with 'traditional notions of fair play and substantial justice'" under the Due Process Clause. Remick v. Manfredy, 238 F.3d 248, 255 (3d Cir. 2001) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). This two-step analysis collapses into one step in Pennsylvania, the state in which this Court sits, because the Pennsylvania long-arm statute is coextensive with the limits of the Due Process Clause. Farino, 960 F.2d at 1221. The Pennsylvania long-arm statute authorizes jurisdiction over persons "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa. Cons. Stat. Ann. § 5322(b) (2004).

The "minimum contacts" required for personal jurisdiction may be either "general" or "specific." See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414, 414 n.8

6

(1984). General jurisdiction is based upon the defendant's "continuous and systematic" contacts with the forum. Remick, 238 F.3d at 255. Specific jurisdiction is appropriate where "the plaintiff's cause of action arises out of a defendant's forum-related activities, such that the defendant 'should reasonably anticipate being haled into court' in that forum." Id. (quoting Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co., 75 F.3d 147, 151 (3d Cir. 1996)). If no party argues that the court has general jurisdiction over the defendant, as in this case, the court may consider solely specific jurisdiction. Marten v. Godwin, 499 F.3d 290, 296 (3d Cir. 2007) (citing Pennzoil Prods. Co. v. Colelli & Assocs., Inc., 149 F.3d 197, 200-01 (3d Cir. 1998)).

Determining whether specific personal jurisdiction lies over a defendant is a "necessarily fact-sensitive inquiry." O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 323 (3d Cir. 2007). The Court's traditional inquiry as to specific jurisdiction has three steps. First, the Court asks whether the defendant "purposefully directed" his activities at the forum. Marten, 499 F.3d at 296 (citing Burger King, 471 U.S. at 472). Second, the Court asks whether the claims "arise out of or relate to" those specific activities. Id. (citing Helicopteros, 466 U.S. at 414). The standard for "relatedness" requires "that a meaningful link exists between a legal obligation that arose in the forum and the substance of the plaintiffs' claims." O'Connor, 496 F.3d at 324. Third, the Court considers whether "the assertion of jurisdiction otherwise 'comport[s] with fair play and substantial justice.'" Marten, 499 F.3d at 296 (citing Burger King, 471 U.S. at 476; Int'l Shoe Co., 326 U.S. at 320). Once the defendant's contacts are sufficient to establish specific jurisdiction, the court will deny jurisdiction only if the defendant "make[s] a 'compelling case' that litigation in Pennsylvania would be unreasonable and unfair," such as by causing an

7

unreasonable burden on the defendant, or by failing to achieve an efficient resolution of the dispute.  O'Connor, 496 F.3d at 325 (quoting Burger King, 471 U.S. at 477).

However, the specific jurisdiction analysis varies based on the type of claim alleged. Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001).  Courts have different considerations for establishing personal jurisdiction over defendants as to breach of contract claims, which follow the traditional analysis just described, and intentional tort claims, which will be discussed below.  Remick, 238 F.3d at 255-56.

### B.  Breach of Contract Claims

To analyze personal jurisdiction over a breach of contract claim, district courts consider "whether the defendant's contacts with the forum were instrumental in either the formation of the contract or its breach."  Gen. Elec. Co., 270 F.3d at 150 (citing Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 289 (1st Cir. 1999)).  Parties may purposely avail themselves of the forum state by creating "continuing relationships and obligations with citizens of" that state.  See id. (quoting Burger King, 471 U.S. at 473).  The mere existence of "a contract, 'without more, is insufficient to establish minimum contacts.'"  Metcalfe, 566 F.3d at 333 n.7 (quoting Sunbelt Corp. v. Noble, Denton & Assocs., Inc., 5 F.3d 28, 32 (3d Cir. 1993)).  Rather, the court evaluates "the totality of the circumstances, including the location and character of the contract negotiations, the terms of the contract, and the parties' actual course of dealing." Remick, 238 F.3d at 256.  For example, in Remick, the defendant's contacts with the Pennsylvania forum included discussing the agreement by telephone call with the plaintiff's Philadelphia office, signing and returning the agreement at issue to Pennsylvania, sending at least one payment to Pennsylvania, and the plaintiff's own performance of services on the defendant's

behalf in its Pennsylvania home office. Id. at 256. The Third Circuit held that these contacts were sufficient to establish specific jurisdiction over the defendant on a breach of contract claim, and reversed the District Court's grant of the motion to dismiss. Id. at 257. By contrast, in Mellon Bank (East) PSFS, N.A. v. DiVeronica Bros., Inc., 983 F.2d 551 (3d Cir. 1993), the Third Circuit found that the defendant's acts of depositing checks drawn on a bank in the forum state, submitting a bond to a third party in the forum state who was selected by the plaintiff, and receiving a letter from plaintiff that was ambiguous as to whether it was a contract were insufficient to establish specific jurisdiction over the defendant. Id. at 556-58. Therefore, the Third Circuit reversed the district court's denial of the motion to dismiss the breach of contract claim. Id. at 558.

In this case, the Court finds that DMM and Donner purposefully directed their activities at the forum state of Pennsylvania in several ways.[3] First, Defendants created the four Invoices at issue, which provided for the sale of Ventilators by DMM to DLL in Pennsylvania. Compl. Exs. E, I, M, Q; Gresh Aff. ¶ 6. These substantial contacts by DMM and Donner are not negated by the separate agreements that the Ventilators were to be delivered to Allied in New Jersey pursuant to lease agreements between Allied and DLL. Second, Defendants mailed these Invoices to DLL's office at 111 Old Eagle School Road in Wayne, Pennsylvania. Gresh Aff. ¶¶

---

[3] Assertion of personal jurisdiction over a non-resident individual corporate officer is proper where the plaintiff alleges that "all of its dealings" were with that individual and "no other individuals ever identified themselves as employees or agents of "the defendant." Marlin Leasing Corp. v. Biomerieux, Inc., No. 06-5609, 2007 WL 1468840, at *4 (E.D. Pa. May 16, 2007) (Baylson, J.). Here, Plaintiff alleges that Bruce Donner was its main point of contact for DMM, and the sole full-time employee of DMM at the New Jersey office address with which Plaintiff did business is Bruce Donner. Compl. ¶ 2; Gresh Aff. ¶ 11. Accordingly, for purposes of this motion, the minimum contacts of Donner and DMM with the forum state are presumed to be coterminous. Defendants have not put forward any evidence to suggest otherwise.

9

7-10. Third, Defendants deposited more than $1.4 million in checks sent from DLL's office in Pennsylvania. Gresh Aff. ¶ 7-10; Compl. Ex. A. This case is thus distinguishable from DiVeronica Bros., where the contacts to the forum state involved third party intermediaries and an ambiguous agreement drafted by the plaintiff. As in Remick, the services that DLL provided to DMM–i.e., reviewing and funding DMM's proposed sales in the Invoices–were rendered from DLL's Pennsylvania headquarters. Gresh Aff. ¶¶ 2, 12.

The Court also finds that Plaintiff's claims arise out of or relate to the above activities by Defendants. DLL's contractual claims are based on allegations that DMM sold fictitious Ventilators to DLL. DLL has established that a meaningful link exists between its claims and Defendants' legal obligations in the forum state.

Finally, the Court considers whether asserting jurisdiction would offend notions of fair play and substantial justice. Here, Defendants have not put forward any countervailing evidence, much less a "compelling" case, to refute this Court's exercise of jurisdiction. Indeed, Defendants did not request jurisdictional discovery to bolster its position, and declined the Court's invitation to do so. Accordingly, this Court finds that it has personal jurisdiction over Defendants as to the breach of contract claims.

**C. Tort Claims**

In Calder v. Jones, 465 U.S. 783 (1984), the Supreme Court set forth the "effects test" for analyzing personal jurisdiction over nonresident defendants with respect to intentional torts committed outside the forum state that have an effect on the plaintiff inside the forum state. The Third Circuit applied Calder in Imo Industries, Inc. v. Kiekert AG, 155 F.3d 254 (3d Cir. 1998), and described the inquiry as follows:

> [T]he Calder 'effects test' requires the plaintiff to show the following: (1) The defendant committed an intentional tort; (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; and (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.

Id. at 265-66 (footnote omitted). If the focus of the dispute is outside of the forum state, mere phone calls and letters to the forum state may be insufficient to establish these prongs. Id. at 268. The "effects test" allows courts to exercise personal jurisdiction over a defendant in a case where the contacts would otherwise be "far too small to comport with the requirements of due process." Id. at 259. Contrary to Defendants' argument, the brunt of the harm is not presumed to occur in the plaintiff's state of incorporation. See Marlin Leasing Corp. v. Biomerieux, Inc., No. 06-5609, 2007 WL 1468840, at *3 (E.D. Pa. May 16, 2007).

Plaintiff sought to analogize this case to and Defendants sought to distinguish this case from Marlin Leasing Corp., in which this Court found that the plaintiff satisfied the "effects test" in a dispute involving fraudulent leasing documents. Id. at *3. In Marlin Leasing Corp., the plaintiff alleged that it felt the brunt of the harm in Pennsylvania because financial matters relating to the leases were handled in its Pennsylvania leasing office. Id. The plaintiff also alleged that the defendant expressly aimed its harm at Pennsylvania by transmitting lease agreements to the plaintiff's Pennsylvania office and depositing payments in Pennsylvania. Id. This Court held that the plaintiff established a prima facie case that the assertion of personal jurisdiction was proper, and that the defendant had not provided countervailing evidence. Id.

The Court agrees with DLL that this case is analogous to Marlin Leasing Corp. Here, Defendants concede the first Calder factor, namely, that Plaintiff has alleged that Defendants committed intentional torts such as fraud and conversion. Defs.' Mot. Dismiss 5. With respect to the second factor, Plaintiff has come forward with its affidavit to establish that DLL suffered the brunt of the harm in Pennsylvania. Indeed, DLL's representative affirms that its Pennsylvania office is the location from which transactions are reviewed, funded, and managed, and from which it sent payments on the Invoices to the Defendants. Gresh Aff. ¶ 12. Moreover, as in Marlin, Plaintiff contends that Defendants expressly aimed the harm at Pennsylvania by sending the Invoices they drafted to DLL's Pennsylvania office, and by accepting the $1,425,000 million dollars remitted from Pennsylvania pursuant to those Invoices. Again, Defendants have not put forth any counter affidavits or competing evidence. Therefore, the Court finds that it may assert personal jurisdiction over the Defendants as to the intentional tort claims.

## VII. Conclusion

For the aforementioned reasons, the Court concludes that it may exercise personal jurisdiction over Defendants in this action. Accordingly, the Court denies the motion to dismiss for lack of personal jurisdiction. An appropriate Order follows.

O:\CIVIL 09-10\10-4108 DeLage Landen v. Donner Medical Marketing\DeLage v. Donner - Memo MTD.wpd